# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| **SALVADOR ARELLANO-CAMPOS,** | : | **PRISONER HABEAS CORPUS** |
| | : | **28 U.S.C. § 2254** |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WARDEN MARTY ALLEN,** | : | **CIVIL ACTION NO.** |
| **Respondent.** | : | **1:11-CV-3911-TWT-AJB** |

## UNITED STATES MAGISTRATE JUDGE'S
## FINAL REPORT AND RECOMMENDATION

Petitioner, Salvador Arellano-Campos, challenges via 28 U.S.C. § 2254 the constitutionality of his 2007 Gwinnett County convictions for two counts of rape. [Doc. 1; Resp't Ex. 1 at 76.][1] The matter is now before the Court for consideration of the petition, [Doc. 1], Respondent's answer response, [Doc. 6], and Petitioner's reply, [Doc. 7]. For the reasons stated below, the undersigned recommends that the petition be denied and this action be dismissed.

## I. Background

The Gwinnett County grand jury indicted Petitioner on two counts of rape of I.M.C., the victim. [Resp't Ex. 1 at 4-5.] Petitioner pleaded not guilty and proceeded

---

[1] The Court uses the center-bottom page numbering of Respondent's Exhibit One, beginning with page one of Petitioner's Notice of Appeal. [Resp't Ex. 1.]

to trial represented by Raymon Burns. [*Id.* at 72; Resp't Ex. 4 at 1.] The jury found Petitioner guilty on both counts, and the court sentenced him to a life term of imprisonment and a concurrent ten year term of imprisonment. [Resp't Ex. 1 at 72, 76.] *Arellano-Campos v. State*, 307 Ga. App. 561, 562, 705 S.E.2d 323, 324 (2011). Petitioner appealed and argued that the evidence was insufficient to support the verdict, that his trial counsel provided ineffective assistance in failing to object to the admissibility of Petitioner's statement to the police that he had sex with the victim because "she provoked" him, and that trial counsel provided ineffective assistance by failing to introduce into evidence exculpatory photographs and letters supporting that Petitioner and the victim were a "couple." *Id.*, 307 Ga. App. at 561-69, 705 S.E.2d at 324-30. The Georgia Court of Appeals rejected the above grounds for relief and affirmed the convictions against Petitioner. *Id.*

In his federal petition, Petitioner argues that (1) trial counsel provided ineffective assistance by failing to object to the admissibility of his pre-trial statement to the police, (2) trial counsel provided ineffective assistance by failing to introduce into evidence photographs and letters to establish that Petitioner and the victim enjoyed a consensual relationship, and (3) his convictions are not supported by the evidence, in violation of fundamental fairness. [Doc. 1 at 5.]

2

## II.     Federal Habeas Corpus Standard

A federal court may issue a writ of habeas corpus on behalf of a person held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law.  28 U.S.C. § 2254(a).  That power is limited.  For claims adjudicated on the merits in state court, federal court review is "greatly circumscribed and is highly deferential to the state courts."  *Hill v. Humphrey*, 662 F.3d 1335, 1343 (11th Cir. 2011) (en banc) (quoting *Payne v. Allen*, 539 F.3d 1297, 1312 (11th Cir. 2008)) (internal quotation marks omitted).  Federal relief is limited to petitioners who demonstrate that the state court adjudication resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).  *Cullen v. Pinholster*, 563 U.S. ----, ----, 131 S. Ct. 1388, 1398 (2011) (stating that the petitioner "carries the burden of proof" to show that § 2254(d) applies).  A state court's factual determinations are presumed correct unless the petitioner presents clear and convincing evidence that those determinations were erroneous.  28 U.S.C. § 2254(e)(1).

3

Under § 2254(d)(1), "[a] state court decision is 'contrary to' federal law 'if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.' " *Childers v. Floyd*, 642 F.3d 953, 971 (11th Cir. 2011) (en banc) (alteration in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)), *petition for cert. filed*, (U.S. July 6, 2011) (No. 11-42). Under § 2254(d)(1), "[a]n 'unreasonable application' of federal law occurs when the 'state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.' " *Id.* (quoting *Williams*, 529 U.S. at 413). A state court's incorrect application of federal law does not warrant federal relief if the state court's determination was reasonable such that "fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 971-72 (quoting *Harrington v. Richter*, --- U.S. ----, ----, 131 S. Ct. 770, 786 (2011) (internal quotation marks omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

4

Further, even if a federal petitioner meets § 2254(d)'s rigorous standard – "a precondition to the grant of habeas relief . . . , not an entitlement to it," the court must then determine whether the error is harmless under *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993). *Fry v. Pliler*, 551 U.S. 112, 119, 121 (2007) ("We hold that in § 2254 proceedings a [federal] court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*.").

This Court has reviewed the pleadings and exhibits and finds that the record contains sufficient facts upon which the issues may be resolved. As Petitioner has made no showing as required by 28 U.S.C. § 2254(e)(2), no federal evidentiary hearing is permitted, and the case is now ready for disposition.[2]

## III.  Discussion

### A.  Ground Three - Sufficiency of the Evidence

#### 1.  State Court History

The Georgia Court of Appeals summarized the following facts.

_____

[2]   Petitioner's unsupported and conclusory assertion that he is entitled to an evidentiary hearing fails. [*See* Doc. 7 at 4-5.] *Allen v. Sec'y, Fla. Dept. of Corrs.*, 611 F.3d 740, 745 (11th Cir. 2010).

AO 72A
(Rev.8/8
2)

I.M.C., who was twenty years old at the time of trial, testified that she had known [Petitioner] since she was four years old, when he began dating her mother and moved in with them in Mexico. I.M.C. called him "dad" and considered him as her father. I.M.C. testified that he began sexually abusing her when she turned 11. She stated that one day, [Petitioner] told her that he loved her and ordered her to take her clothes off. [Petitioner] threatened to harm her family if she refused. Repulsed, I.M.C. said no, but [Petitioner] removed her clothing and put his penis inside her vagina. I.M.C. testified that it hurt, and she bled. She testified that [Petitioner] told her not to tell anyone or else her family would "pay very badly." [Petitioner] raped I.M.C. repeatedly and abused her in other ways as well. He would scream at her, "asshole, useless, idiot good for nothing," and once beat her with a shovel. [Petitioner] beat I.M.C.'s nine-year-old brother repeatedly, even punching him in the face. I.M.C. testified that the police were called but did nothing because [Petitioner] bribed them.

[Petitioner] and I.M.C.'s mother separated when I.M.C. was 13 years old. Still she did not report his abuse, fearing repercussions. [Petitioner] returned when I.M.C. was 14 and began raping her again. She believed that he would kill her family if she told anyone. He took her to a hotel on her 15th birthday, in 2001, claiming he had a surprise for her, and then raped her again. [Petitioner] made a videotape of the incident; he claimed that the videotape was in his mother's possession.[3]

I.M.C. testified that the day after her birthday, [Petitioner] brought her from Mexico to the United States, promising her that she would attend school and that her mother would join them. The promises were false. Instead of permitting I.M.C. to attend school here, [Petitioner] put her to

---

[3]    In his statement to the police, Petitioner initially denied any sexual activity; then he admitted it, but stated that the victim had provoked him; then he stated that the activity was consensual and admitted making a videotape, in Mexico, of himself having sex with the victim and stated that he had been forty-three years old and she had been sixteen and that he made the tape so that he "had the proof to show that I had not made her do it." [Resp't Ex. 8 at 80-82, 90-91, 93-96.]

AO 72A
(Rev.8/8
2)

work selling cheese door-to-door. At the time of trial, she had only a sixth grade education. [Petitioner] allowed her to speak to her family in Mexico but supervised the conversations and instructed her to say that she was studying. After living in one apartment for a year or so, I.M.C. testified that her mother learned their address and expressed an intention to visit. [Petitioner] told I.M.C.'s mother that they were already back in Mexico, which was false. Then [Petitioner] moved I.M.C. to a different apartment and never allowed her to call her mother again. According to I.M.C., [Petitioner] installed a lock on the front door that could only be opened from the outside, and he kept I.M.C. locked in. He made her cook and do laundry and screamed at her, "idiot, . . . stupid imbecile." I.M.C. testified that [Petitioner] continued to force her to have sexual intercourse and to threaten to harm her family if she refused.

Finally, on May 17, 2004, I.M.C. saw a taxi driving by and flagged down the driver, who took her to the Norcross police station. She testified that she escaped from the apartment through the window. I.M.C. told the police that [Petitioner] generally raped her "every third day," but had raped her on each of the two days before she came to the police station. She testified that she had been watching cartoons when [Petitioner] told her to turn off the television and unbutton her pants. She tried to refuse him but he threatened her family.

At the police station, officer David Aguilar interviewed I.M.C., who stated that [Petitioner], whom she referred to as her mother's boyfriend, had touched her and penetrated her. Aguilar testified that I.M.C. was crying and embarrassed during the interview. After I.M.C. gave a statement to Aguilar, she was taken to the Gwinnett County Sexual Assault Center, where she was examined by Katherine Boyd "Kabee" Johnston, an expert sexual assault nurse examiner. Sergeant Edward Restrepo of the Gwinnett County Police Department assisted in translating for I.M.C., as she spoke only Spanish.

Johnston testified that I.M.C. told her, through Restrepo, that her "stepfather" had been vaginally penetrating her since she was 11 years old

and that the last sexual assault had occurred 18 hours earlier. The parties stipulated that samples collected from the vaginal examination performed by Johnston failed to reveal the presence of seminal fluid. Johnston testified, however, that due to the physical characteristics of the vagina and the fact that she used dry swabs to collect the samples, there could have been seminal fluid in I.M.C.'s body that the swabs did not pick up. Johnston also testified that her examination revealed that I.M.C. "had little pieces of hymen left," which would be consistent with a person having intercourse for a "fairly long period of time." I.M.C. was 17 years old at the time of the examination. Finally, Johnston testified that I.M.C.'s statement that she had been vaginally penetrated since she was 11 years old, most recently 18 hours earlier, was consistent with the physical examination.

The parties stipulated that Restrepo advised [Petitioner] of his constitutional rights in Spanish and that he freely, willingly and voluntarily waived those rights before making a statement to the police. Restrepo testified that [Petitioner], who was in his 40s, initially stated that he lived with I.M.C. in a "father-daughter type relationship" and that he had dated I.M.C.'s mother in Mexico. [Petitioner] repeatedly denied having any sexual contact with I.M.C. until detectives confronted him with the possibility that semen evidence may have been collected from her. [Petitioner] then admitted that he had sexual intercourse with I.M.C. two or three times. [Petitioner] claimed that I.M.C. initiated the sex by grabbing his penis and that he told her, "No, we can't do this; I'm your father." Over his objection, a portion of [Petitioner's] videotaped statement was played for the jury. When questioned about the rapes for which he was indicted, [Petitioner] stated: "Well, what happened was I didn't feel like doing it but she provoked me."

[Petitioner] presented the testimony of two witnesses and testified in his own behalf. I.M.C. had obtained a business card from the taxi driver who took her to the police station, and he had written his name and cell phone number on the card. The taxi driver identified the card but did

not recognize I.M.C. and testified that he had never helped anyone climb out of a window.

Jose Espinosa Guzman, [Petitioner's] brother-in-law, testified that [Petitioner] lived with him for a year in 2001 but then left with his "mate." Guzman testified that he did not know the name of [Petitioner's] "mate" although he had known her since she was a little girl. According to Guzman, [Petitioner] introduced the victim as his "girlfriend," and they seemed to have a "good, normal," and "intimate" relationship.

Finally, [Petitioner] testified. He admitted that he had sexual relations with I.M.C. "more than once" and claimed that they lived "like a couple" for more than 16 months. According to [Petitioner], they first had sexual relations when I.M.C. was 16 years old. [Petitioner] claimed that their relationship was consensual and that they "got along marvelously." [Petitioner] denied ever threatening to harm I.M.C.'s family if she refused to have sex with him. [Petitioner] testified that he lied to the police when he told them that his relationship with I.M.C. was that of father and daughter. He also testified that he lied to the police when he stated that he had a romantic relationship with I.M.C.'s mother. [Petitioner] claimed that the police forced him to say that he had been having sex with I.M.C. since she was 11 years old by verbally mistreating him and threatening to kill him. Restrepo testified in rebuttal that he did not threaten or verbally abuse [Petitioner] when interviewing him.

*Arellano-Campos*, 307 Ga. App. at 562-65, 705 S.E.2d at 325-27. The Georgia Court of Appeals reviewed the elements of rape – "when a person has carnal knowledge of a female forcibly and against her will." *Id.*, 307 Ga. App. at 562, 705 S.E.2d at 325. The appellate court determined that the evidence of a history of intimidation (which had begun when the victim was eleven years old) and Petitioner's ongoing threats to the

victim were sufficient to support the jury's finding of force, that any lack of physical resistance by the victim was induced by fear, and that the jury was entitled to find that Petitioner had carnal knowledge of the victim "forcibly and against her will." *Id*., 307 Ga. App. at 565-66, 705 S.E.2d at 327.

## 2.   Parties' Arguments

Petitioner argues summarily that his convictions are not supported by the evidence, in violation of fundamental fairness. [Doc. 1 at 5.] Respondent argues that Petitioner has failed to demonstrate that the Georgia Court of Appeals' decision was an unreasonable determination of the facts or application of the law. [Doc. 6, Br. at 6.] Petitioner replies that the Georgia Court of Appeals' decision was "nothing more than a rubber stamp denial amounting to an abuse of discretion in a manner contrary to the holding . . . of *Early v. Packer*, 537 U.S. 3, 7 (2002)."[4] [Doc. 7 at 2.] Petitioner also asserts, without any specific or factual argument, that the state court improperly found that his grounds lacked merit without any record evidence to support its finding. [*Id*. at 5.]

---

[4]      The Court in *Early* determined that the state court reasonably applied federal law in determining that the trial court's comments to a deadlocked jury were non-coercive. *Early*, 537 U.S. at 11. The Court discerns in *Early* no holding that pertains to an alleged "rubber stamp denial," [Doc. 7 at 2], by a state appellate court. *Early* is not further addressed.

10

### 3. __Recommendation__

To review a sufficiency of the evidence argument under federal due process requirements, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Further, it is the petitioner's burden to show that the challenged ruling is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

Petitioner does not attempt to rebut any of the appellate court's factual findings, and they are presumed correct. *See* 28 U.S.C. § 2254(e)(1). Petitioner presents nothing other than conclusory arguments that the evidence against him was insufficient and that the Georgia Court of Appeals' decision is not supported by any record evidence. Petitioner has not met his burden. Further, on independent review of the Georgia Court of Appeals' decision, the undersigned finds that it is entitled to deference because there is an ample evidentiary basis – as shown in the review of trial evidence above – whereby a rational trier of fact could have found that Petitioner had carnal knowledge of the victim, forcibly and against her will. Ground Three fails.

AO 72A
(Rev.8/8
2)

**B.** **Ground One: Ineffective Assistance of Counsel for Failing to Challenge the Admission into Evidence of his Custodial Statement, a _Miranda/Edwards_ Issue**[5]

**1.** **State Court History**

The Georgia Court of Appeals stated the standard for ineffective assistance of counsel as follows.

> In order to prevail on his ineffective assistance claim, [Petitioner] must show that trial counsel performed deficiently and that the deficient performance prejudiced him. To prove that his trial counsel performed deficiently, [Petitioner] "must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct." In order to establish prejudice, [Petitioner] "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

_Arellano-Campos_, 307 Ga. App. at 566, 705 S.E.2d at 327 (footnotes and citations omitted). The Court of Appeals then reviewed counsel's assistance on the _Miranda/Edwards_ issue as follows.

> [Petitioner] contends that trial counsel performed deficiently in failing to file a motion to suppress his custodial statement, and in stipulating to its admissibility, because it was obtained in violation of _Miranda_. "When

---

[5]      _See Edwards v. Arizona_, 451 U.S. 477, 484-85 (1981) (establishing rule that once a suspect in custody has requested counsel, interrogation must cease unless counsel is provided or suspect initiates communication with police); _Miranda v. Arizona_, 384 U.S. 436, 444-45 (1966) (holding that, when a suspect "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking[,] there can be no questioning").

AO 72A
(Rev.8/8
2)

trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion."[6]  We conclude that [Petitioner] did not make the requisite showing.

> When a defendant invokes his right to counsel, police must cease all further interrogation until counsel is made available to defendant.  However, if after invoking his right to counsel a defendant initiates further communication with police and knowingly and intelligently waives his right to counsel, police can question defendant further.

> The record herein shows that these conditions were satisfied.  The transcript of [Petitioner's] videotaped interview, which was introduced into evidence at the new trial hearing, reveals that after being advised of his *Miranda* rights,[7] [Petitioner] stated, "I need an attorney to defend me."  The police officer who was questioning him, Restrepo, then stated,

---

[6]  Georgia courts are "reluctant to reverse a case on the ground of ineffective assistance of counsel whenever the specific complaint urged can reasonably be construed as involving defense counsel's trial strategy," and they require a defendant to "make a strong showing that if trial counsel had made a motion to suppress, the damaging evidence would have been suppressed." *Rubiano v. State*, 147 Ga. App. 142, 143, 248 S.E.2d 207, 209 (1978).  Although this standard appears to enhance the standard under *Strickland v. Washington*, 466 U.S. 668 (1984), it does not effect the Court's analysis because, as discussed below, the Georgia Court of Appeals' decision was reasonable under *Strickland*.

[7]  After the detective read the *Miranda* warnings once, Petitioner stated he did not understand.  After the detective repeated the Miranda warnings, Petitioner stated that he did not understand about "stop the questions," and the detective explained that, if he decided to answer questions without an attorney, he could stop the interrogation at any point.  [Resp't Ex. 8 at 65.]

13

"Ok.  So you want an attorney?"  [Petitioner] replied "yes."  The following colloquy ensued:

> [Restrepo:] Ok. You don't want to talk to me?

> [Petitioner:] I don't know what I'm being accused of.  I was not told anything.

> [Restrepo:] Before I can speak with you, you have to understand your rights.  And then I explain to you everything that is happening and then you can understand at that time if you want to talk to me or not.

> [Petitioner:] I need to know what this is about. . . .

> [Restrepo:] Ok, I'll repeat it to you again.  If you want to talk to me, we'll talk. . . .  And for me to be able to explain to you everything that is happening, and you to talk to me, you have to say yes, yes you understand your rights or you don't understand them or you don't want to talk to me.

> [Petitioner:] Ok, yes, I understand them. . . . And I need an attorney. I need to make a call.

> [Restrepo:] Ok. That's fine. One moment, ok?

The transcript shows that, at that point, Restrepo stopped the interview and left the room.  The time stamp on the tape indicates that the recording was restarted seven minutes later.  Restrepo testified that he stopped the tape because [Petitioner] had asked for a lawyer.  He further testified that while preparing [Petitioner] for transport to the jail, [Petitioner] asked him "what this was all about."  Restrepo answered that "it was about him and [I.M.C.] having sex."  Restrepo testified there had been no conversation up to this point since he stopped the tape.  Then [Petitioner] began to speak, and Restrepo informed him that he would

14

need to advise him of his rights. The transcript reveals that [Petitioner] stated, "I already heard them once." Restrepo read [Petitioner] the *Miranda* warnings again. [Petitioner] acknowledged that he understood them and wanted to speak without an attorney. . . .[8]

. . . .

[T]he record shows that questioning ceased after [Petitioner] invoked his right to counsel, albeit after the second request. [Petitioner] made no incriminating statement between the two requests. Thereafter, [Petitioner] voluntarily reinitiated discussions with the police when he asked "what this was all about." [Petitioner] was advised of his *Miranda* rights and waived them. . . . Accordingly, [Petitioner] has failed to make a strong showing that his statement would have been suppressed had counsel made the motion. [Petitioner] has thus failed to carry his burden of showing that counsel was ineffective for stipulating to the admissibility of the statement.

*Arellano-Campos*, 307 Ga. App. at 566-69, 705 S.E.2d at 328-29 (alterations adding

Restrepo's name in the colloquy are in the original) (footnotes and citations omitted).

### 2. **Parties' Arguments**

Petitioner argues that trial counsel provided ineffective assistance by failing to

object to the admissibility of his pre-trial statement to the police, which was obtained

in violation of *Miranda* protections. [Doc. 1 at 5.] Respondent argues that Petitioner

has failed to demonstrate that the Georgia Court of Appeals' decision was an

---

[8]    It was after this point that Petitioner made his statement to the police, including a statement that the victim had provoked him. [*See* Resp't Ex. 8 at 94.]

AO 72A
(Rev.8/8
2)

unreasonable determination of the facts or application of the law. [Doc. 6, Br. at 4-5.] Petitioner asserts, without any specific or factual argument, that the state court improperly found that his grounds lacked merit without any record evidence to support its finding. [Doc. 7 at 5.]

### 3. <u>Recommendation</u>

A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance. *Strickland*, 466 U.S. at 687. To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. *Id.* at 690-92. The Court may resolve an ineffective assistance claim based on either of the above prongs. *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000). The petitioner has the burden of establishing his ineffective assistance claim by a preponderance of competent evidence. *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc). Additionally, in a § 2254 proceeding, "doubly deferential judicial review . . . applies to a *Strickland* claim." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that

16

determination was unreasonable – a substantially higher threshold.' " (citation omitted)).

Clearly established federal law states that "an accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484-85. "The term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. . . . [T]he definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301-02 (1980) (footnotes omitted). Although a prisoner cannot be said to have initiated further communication under *Edwards* by asking for a drink of water or requesting to use the telephone, he does initiate further communication by asking a question such as, "Well, what is going to happen to me now?" – showing a willingness to generally discuss the investigation. *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983).

AO 72A
(Rev.8/8
2)

Petitioner does not attempt to rebut any of the Georgia appellate court's factual findings, and they are presumed correct.  *See* 28 U.S.C. § 2254(e)(1).  Additionally, Petitioner presents only a conclusory argument that trial counsel performed ineffectively by failing to object to the admissibility of his pre-trial statement to the police and that the Georgia Court of Appeals' decision is not supported by any record evidence.  Petitioner has not met his burden.

Further, on independent review of the Georgia Court of Appeals' decision, the undersigned finds that it is entitled to deference.  The exchange between Restrepo and Petitioner before Restrepo stopped the interview shows an effort by Restrepo to ensure that Petitioner understood his *Miranda* rights, which Petitioner had just questioned, twice.  The exchange did not consist of "words or actions . . . that [Restrepo] *should have known* were reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 302.  Therefore, there was no interrogation between the time that Petitioner first requested counsel and then later initiated further conversation.  The facts, which Petitioner has not rebutted, show that – after the interview had ceased and while Restrepo was "preparing [Petitioner] for transport to the jail" – Petitioner asked him " 'what this was all about,' " that "there had been no conversation up to th[at] point" since the tape had been stopped, and that Petitioner then "began to speak, and Restrepo

18

informed him that he would need to [again] advise him of his rights."
*Arellano-Campos*, 307 Ga. App. at 567, 705 S.E.2d at 328 (no citation in original).
Those facts show that Petitioner initiated the conversation. *See Oregon*, 462 U.S. at
1045-46. There is no reasonable probability that different action by counsel would
have resulted in the trial court excluding Petitioner's statement based on a
*Miranda/Edwards* violation. The Georgia Court of Appeals' decision was reasonable
under *Strickland.*

## C. Ground Two: Ineffective Assistance of Counsel for Failing to Present Certain Exculpatory Evidence

### 1. State Court History

On direct appeal, Petitioner argued that he had made trial counsel aware of
certain pictures and documents that supported his defense that he and the victim
enjoyed a consensual relationship and that counsel had provided ineffective assistance
in refusing to present it as evidence. [Resp't Ex 9 at 36-38.] The Georgia Court of
Appeals reviewed Petitioner's claim as follows.

> [Petitioner] contends that trial counsel failed to present evidence
> that was available at trial and was exculpatory. This evidence consisted
> of photographs depicting [Petitioner] in an apartment, a few photographs
> of the victim, a "love note" that [Petitioner] claimed the victim wrote him,
> a copy of an airline reservation, and a copy of a lawsuit brought by the
> victim's mother against [Petitioner], accusing him of kidnapping her.

AO 72A
(Rev.8/8
2)

[Petitioner] testified at the new trial hearing that this evidence showed them as a "couple"; that he asked Burns to introduce it for that reason; and that Burns refused to do so. [Petitioner] asserts on appeal that Burns should have introduced the evidence at trial to impeach the victim's testimony that [Petitioner] held her against her will. Burns testified, however, that he had never seen any of the evidence at issue before the new trial hearing. In its order denying [Petitioner's] motion for new trial, the trial court found Burns's testimony that he was not presented with the evidence to be more credible than [Petitioner's] testimony. As the finder of fact at the new trial hearing, the trial court was entitled to believe trial counsel and disbelieve [Petitioner] on this issue. Accordingly, the trial court did not err in rejecting [Petitioner's] ineffectiveness claim on this ground.

*Arellano-Campos*, 307 Ga. App. at 569, 705 S.E.2d at 329-30 (footnote omitted).

## 2.   <u>Parties' Arguments</u>

Petitioner argues that trial counsel provided ineffective assistance by failing to introduce into evidence photographs and letters that would have established that he and the victim enjoyed a consensual relationship. [Doc. 1 at 5.] Respondent argues that Petitioner has failed to demonstrate that the Georgia Court of Appeals' decision was an unreasonable determination of the facts or application of the law. [Doc. 6, Br. at 5-6.] Petitioner asserts, without any specific or factual argument, that the state court improperly found that his grounds lacked merit without any record evidence to support its finding. [Doc. 7 at 5.]

### 3.    <u>**Law and Disposition**</u>

The standard for ineffective assistance of counsel is stated above.  Petitioner does not attempt to rebut any of the appellate court's factual findings, and they are presumed correct, including the finding that counsel was not aware of, or presented with, any of the alleged material before or during trial.  *See* 28 U.S.C. § 2254(e)(1).  Additionally, Petitioner presents nothing other than a conclusory argument that trial counsel provided ineffective assistance by failing to introduce into evidence certain (unspecified) photographs and letters that would have established that Petitioner and the victim enjoyed a consensual relationship and that the Georgia Court of Appeals' decision is not supported by any record evidence.  Petitioner has not met his burden.

Further, on independent review of the Georgia Court of Appeals' decision, the undersigned finds that it is entitled to deference.  It cannot be said that the Georgia Court of Appeals unreasonably applied *Strickland* when it found that counsel performed reasonably when he did not submit into evidence material that he had never seen and that his client, who had knowledge of the material, had not presented him with.[9]  *Cf. Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may

_____

[9]    Petitioner does not argue that counsel was ineffective for failing to independently investigate and discover the alleged evidence, and the Court does not address such argument.

be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."); *Allen*, 611 F.3d at 752-53 (holding that counsel was not deficient for failing to investigate alibi defense theory when defendant did not inform counsel of the relevant facts that he knew), *cert. denied*, --- U.S. ----, 131 S. Ct. 2898 (2011).  As a result, Ground Two fails.

## IV.    Certificate of Appealability ("COA")

Pursuant to Rule 11 of the Rules Governing § 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . .  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  To satisfy that standard, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Lott v. Attorney Gen.*, 594 F.3d 1296, 1301 (11th Cir. 2010)

AO 72A
(Rev.8/8
2)

(quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)) (internal quotation marks omitted).  " 'When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim,' . . . a certificate of appealability should issue only when the prisoner shows both 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.' " *Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Based on the above discussion, the undersigned recommends that a COA is unwarranted on all grounds.  If the Court adopts this recommendation and denies a COA, Petitioner is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing § 2254 Cases in the United States District Courts.

## V.     **Conclusion**

For the reasons stated above,

It is **RECOMMENDED** that the instant petition for a writ of habeas corpus, [Doc. 1], be **DENIED** and that the instant action be **DISMISSED**.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

23

AO 72A
(Rev.8/8
2)

**IT IS SO RECOMMENDED and DIRECTED**, this 2d day of July, 2012.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/8
2)